# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

*SAN JOSE DIVISION*

## THE UNITED STATES OF AMERICA

vs

## HANK RISAN

CR-25 00222 PCP    NC

*SEALED BY ORDER OF COURT*

*FILED JUL 31 2025 — CLERK, U.S. DISTRICT COURT, NORTH DISTRICT OF CALIFORNIA, SAN JOSE OFFICE*

---

## INDICTMENT

**COUNTS ONE - FOUR:**    18 U.S.C. § 1343 – Wire Fraud

*A true bill.*

_____
*Foreperson*

---

Filed in open court this __31__ day of __July__ A.D. 202__5__

_____
*United States Magistrate Judge*

---

Bail. $ __no bail arrest warrant__

1  CRAIG H. MISSAKIAN (CABN 125202)
   United States Attorney

FILED
JUL 31 2025
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| UNITED STATES OF AMERICA, | ) CASE NO. CR-25 00222 PCP NC |
|---|---|
| Plaintiff, | ) VIOLATIONS: 18 U.S.C. § 1343 – Wire Fraud; 18 U.S.C. §§ 981, 982, and 28 U.S.C. § 2461(c) – Forfeiture |
| v. | ) |
| HANK RISAN, | ) SAN JOSE VENUE |
| Defendant. | ) |

INDICTMENT

The Grand Jury charges:

Introductory Allegations

At all times relevant to this Indictment:

1. HANK RISAN was a resident of Santa Cruz, California. RISAN owned or controlled multiple business entities organized in California, including BlueBeat, Inc., Media Rights Technologies, Inc., and Encryptos, Inc.

2. BlueBeat, Inc. ("BlueBeat") was a Delaware stock corporation first registered on or about November 19, 2003, and purports to be a music streaming company. RISAN is listed as the registered agent of BlueBeat, Inc.

3. Media Rights Technologies, Inc. ("MRT") was a California stock corporation first registered on or about August 8, 2001, and purports to be a software development company. MRT is also

INDICTMENT                                    1

the parent company of BlueBeat, Inc. RISAN is listed as the registered agent of MRT.

4. RISAN was the CEO of both BlueBeat and MRT and has operated both business entities since the early 2000s.

5. The registered business address for MRT and BlueBeat is in Santa Cruz, California.

## The Scheme to Defraud

6. RISAN offered and sold MRT and/or BlueBeat stock and stock conversion to investors in the Northern District of California and elsewhere. RISAN induced at least thirty-three investors to purchase such stock and stock conversions, and to make payments characterized as "loans." RISAN obtained approximately $3,165,859 from investor transactions. Most investors received little or no money in return.

7. In order to entice potential investors, RISAN made, and caused to be made, false statements regarding his companies. These statements included: (1) false claims of BlueBeat's copyright ownership of approximately 2.5 million songs by various well-known artists (referred to as "psycho-acoustic simulations"); (2) false and misleading comparisons/valuations of BlueBeat; (3) false claims of imminent acquisition of BlueBeat by a multinational mass media and entertainment conglomerate ("Multi-Media Conglomerate"); and (4) false claims of association and involvement by a former Undersecretary of the United States Department of Commerce ("the Former Undersecretary") with MRT and/or BlueBeat. In reality, BlueBeat did not own the copyrights to these 2.5 million songs, and the "psycho-acoustic simulations" advertised by RISAN were simply exact copies of songs on CDs purchased at retail locations. Additionally, the Multi-Media Conglomerate was not in the process of acquiring BlueBeat or its catalog, the Former Undersecretary was not involved with BlueBeat, and the resulting valuations of MRT and/or BlueBeat were fictional.

8. RISAN made, and caused to be made, such false statements to persons known to the Grand Jury as Investors 1, 2, 3, and 4. After receiving false and misleading statements and misrepresentations from RISAN, Investors 1, 2, 3, and 4 initiated electronic wire transfers and/or check deposits, for the purpose of investing money in MRT and/or BlueBeat.

9. Investor 1 is a resident of Santa Cruz, California. Investor 1 invested in MRT and BlueBeat in part based upon RISAN's representations that the Multi-Media Conglomerate was engaged in

negotiations to purchase Bluebeat and the Former Undersecretary for the Department of Commerce was involved in the Bluebeat sale to the Multi-Media Conglomerate.

10. Investor 2 is a resident of Charleston, South Carolina. Investor 2 invested in MRT and BlueBeat in part based upon RISAN's representations that the Multi-Media Conglomerate was engaged in negotiations to purchase BlueBeat.

11. Investor 3 is a resident of Aptos, California. Investor 3 invested in MRT and BlueBeat in part based upon RISAN's representations that that the Multi-Media Conglomerate was engaged in negotiations to purchase BlueBeat and the Former Undersecretary for the Department of Commerce was involved in the BlueBeat sale to the Multi-Media Conglomerate.

12. Investor 4 is a resident of Leesburg, Virginia. Investor 4 invested in MRT and BlueBeat in part based upon RISAN's representations that BlueBeat owned the copyrights to certain "psycho-acoustic simulations" and that the Former Undersecretary for the Department of Commerce was involved in the BlueBeat sale to the Multi-Media Conglomerate.

13. In total, RISAN received at least approximately $1,959,187 from various investors to purchase stock in MRT and/or BlueBeat based on false and misleading statements and misrepresentations.

14. RISAN directed that stock purchases be electronically deposited into bank accounts that RISAN controlled, including a Wells Fargo Media Rights Technologies, Inc. account ending in -9724.

15. Following the deposit of investor funds into the MRT Wells Fargo account ending in -9724, RISAN transferred funds to other accounts under his control, including to an Encryptos, Inc. Wells Fargo Account ending in -2382 and a Bluebeat Inc. Wells Fargo Account ending in -3029.

16. After receiving the investor funds via electronic wire, RISAN used the fraudulently obtained funds to enrich himself, including making payments on personal credit cards payments on collectables and mortgage payments on his personal residence located in Santa Cruz, California.

RISAN's False Representations to Investors

17. In furtherance of the above-described scheme and artifice to defraud, RISAN made false statements and misrepresentations in various forms, including orally and via email. The following paragraphs provide examples of such statements made to investors and potential investors as part of RISAN's scheme and artifice to defraud:

18. On or about July 23, 2020, RISAN represented to investors via email the following: "BlueBeat is in play for acquisition!" and "Currently, we have begun talks with [Multi-Media Conglomerate] for a BlueBeat acquisition."

19. On or about August 31, 2020, RISAN represented to investors via email that he received "a preliminary valuation for Bluebeat and the Bluebeat Catalog which is on par with [Company-1]." The email then clarified that Company-1 had a "Valuation of over $48 Billion as of 6/30/2020."

20. On or about October 12, 2020, RISAN represented to investors via email the following: "The BlueBeat Merger and Acquisition (M & A) Team is now complete and in place. [Former Undersecretary] leads the team . . ." and "This stellar team of winners has been put in place to handle the same of Bluebeat. In my opinion, these are the right guys who will get the job done for Bluebeat." RISAN's email then listed the names of the Former Undersecretary and other prominent individuals with a Uniform Website Link (URL) link to their biographies.

21. On or about November 3, 2020, RISAN represented to investors via email that he "received a very favorable comparable regarding the BlueBeat Catalog." RISAN then noted: "To put that news in perspective, BlueBeat contains approximately 2.5 million songs and $10K per song brings music to my ears. You can do the math!"

22. On or about December 28, 2020, RISAN represented to investors via email: "Our music catalog experts will be providing us with a final number in the next few days but we think the BlueBeat Master Recording Catalog has value on the low side of approximately $20,000 to $100,000 per song, which gives the catalog a $60B + valuations. The BlueBeat business model is to sell its master recording rights to artists and broadcasters such as [the Multi-Media Conglomerate], for a heavily discounted price in order to obtain profitable royalties for streaming broadcasts."

23. On or about January 5, 2021, RISAN represented to investors via email: "At 2.5 million sound recordings, the BlueBeat Catalog has a conservative inventory valuation of over $90 Billion."

24. On or about January 14, 2021, RISAN represented to investors via email that "interest and demand for our Catalog is impressive" and "BlueBeat is now poised to monetize its Catalog in a big way."

25. On or about January 20, 2021, RISAN represented to investors via email that "We are pleased to announce our first BlueBeat Catalog sale is imminent . . ."

INDICTMENT                                     4

COUNTS ONE THROUGH FOUR: (18 U.S.C. § 1343 – Wire Fraud)

26. Paragraphs 1 through 25 of this Indictment are re-alleged and incorporated as if fully set forth here.

27. Beginning in or about July 2020, and continuing to in or about November 2022, in the Northern District of California and elsewhere, the defendant,

HANK RISAN,

knowingly and with intent to defraud and cheat, devised and intended to devise a scheme and artifice to defraud investors as to material matters, for the purpose of obtaining money and property under the custody and control of investors, by means of materially false and fraudulent pretenses, representations, omissions, and/or promises.

28. On or about the dates set forth below, in the Northern District of California and elsewhere, for the purpose of executing the aforementioned scheme and artifice to defraud and attempting to do so, the defendant, HANK RISAN, did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of a wire communication, certain writings, signs, signals, pictures, and sounds, specifically identified below:

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| 1 | 8/24/2020 | Interstate wire transfer of $10,000 from Investor 1's Provident Credit Union account to Media Rights Technologies' account ending in -9724. |
| 2 | 9/30/2020 | Interstate wire transfer of $29,600 from Investor 2's Southern First Bank account to Media Rights Technologies' account ending in -9724. |
| 3 | 11/12/2020 (Posted) | Cashier's check of $51,097 from Investor 3's Santa Cruz County Bank deposited to Media Rights Technologies' account ending in -9724. |
| 4 | 11/9/2022 | Interstate wire transfer of $37,000 from Investor 4's United Bank account to Media Rights Technologies' account ending in -9724. |

All in violation of Title 18, United States Code, Section 1343.

//

INDICTMENT                                                       5

[handwritten: 982, mH M.C.]

1 <u>FOREFEITURE ALLEGATION</u> (18 U.S.C. §§ 981, and 28 U.S.C. § 2461(c) – Forfeiture)

2    29.    The allegations contained in this Indictment are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

    30.    Upon a conviction of any of the offenses set forth in Counts One through Four of this Indictment, the defendant,

HANK RISAN,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real or personal, constituting or derived from proceeds the defendant obtained directly or indirectly, as a result of said violations, including but not limited to the following: A forfeiture money judgment: A sum of money representing the total value of proceeds obtained directly or indirectly by the defendant from the commission of the offense of conviction.

    31.    If any of the property described above, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third person;

    (c)    has been placed beyond the jurisdiction of the Court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

//
//
//
//
//
//
//

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Federal Rule of Criminal Procedure 32.2.

DATED: 07/31/2025

A TRUE BILL.

_____
FOREPERSON

CRAIG H. MISSAKIAN
United States Attorney

_____
MATTHEW CHANG
JEFF NEDROW
Assistant United States Attorneys

INDICTMENT                                7